SHAUN KHOJAYAN (#197690)
LAW OFFICES OF SHAUN KHOJAYAN & ASSOC., P.L.C.
515 S. Flower St., 19th FL
Los Angeles, CA 90071
Telephone: (310) 274-6111; Facsimile: (310) 274-6211
Email: shaun@khojayan.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

RICHARD ANTHONY WILFORD,

    Petitioner,

vs.

JAMES ENGLEMAN,

    Respondent.

Case No.: 2:24cv1470

**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

## I. INTRODUCTION

1. On June 15, 2023, Richard Anthony Wilford was released to home confinement by the Bureau of Prisons pursuant to the CARES Act. Nearly two months later, the BOP, without explanation, removed Wilford from home confinement and transferred him to FCI Terminal Island. The BOP afforded Wilford no process in connection with his removal from home confinement. This was unlawful, and a violation of Wilford's right to due process. The Court should grant this Petition for Writ of Habeas Corpus and order that Wilford be returned to home confinement and—to the extent BOP wishes to again terminate his home confinement—afford Wilford the due process he is entitled to receive.

## II. THE PARTIES

2. Petitioner Richard Anthony Wilford is a federal prisoner incarcerated at FCI Terminal Island. His federal register number is 28670-037. Wilford is currently scheduled for release from the BOP on August 4, 2030.

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 - 1

3. Respondent, James Engleman, is the Warden at FCI Terminal Island. Respondent is Wilford's immediate custodian.

**III.    VENUE**

4. Venue for this habeas proceeding is proper in the Central District of California as FCI Terminal Island is located in this district.

**IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5. The Bureau of Prisons (BOP) has established the Administrative Remedy Program, governed by regulations in Title 28 Code of Federal Regulations (C.F.R.) Part 542, Subpart B, which affords inmates the opportunity to formally seek review of matters related to their confinement. 28 C.F.R. § 542.10(a).

6. The program extends to all inmates within BOP-operated institutions, and inmates designated to contract Residential Reentry Centers (RRCs) under BOP jurisdiction. 28 C.F.R. § 542.10(b).

7. The initiation of the grievance process typically begins with the informal resolution phase, in which an inmate must initially present their concern informally to staff, who are then responsible for attempting to resolve the issue prior to the inmate submitting a Request for Administrative Remedy. 28 C.F.R. § 542.13(a). However, exceptions to this requirement exist, notably for inmates in RRCs and instances where an inmate can demonstrate an acceptable reason for bypassing informal resolution, at the discretion of the Warden or institution Administrative Remedy Coordinator. 28 C.F.R. § 542.13(b).

8. The subsequent step in the process involves the initial filing of a formal written Administrative Remedy Request using the appropriate form (BP-9), with a deadline of 20 calendar days following the occurrence of the basis for the Request. 28 C.F.R. § 542.14(a).

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 - 2

9. Regarding the form's content and submission, inmates are instructed to obtain the appropriate form from RRC or institution staff, place a single complaint or a reasonable number of closely related issues on the form, complete it with all requested identifying information, and date and sign the Request before submission to designated staff, typically a correctional counselor. 28 C.F.R. § 542.14(c).

10. Where an inmate is dissatisfied with the Warden's response, they may proceed to the appeals stage by submitting an Appeal on the appropriate form (BP-10) to the relevant Regional Director within 20 calendar days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). If dissatisfaction persists after the Regional Director's response, an inmate may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response.

11. Rejections of Requests or Appeals may occur if they are written in an obscene or abusive manner or fail to meet other requirements, with the Coordinator at the relevant level responsible for rejecting and returning such submissions. 28 C.F.R. § 542.17(a). In the event of rejection, inmates are entitled to a written notice explaining the reason for rejection and, when correctable, a reasonable time extension to correct the defect and resubmit the Request or Appeal. 28 C.F.R. § 542.17(b). Appeals of rejections may be pursued to the next appeal level, with the Coordinator at that level having the authority to affirm the rejection, direct the submission's acceptance at the lower level, or accept the submission for filing. 28 C.F.R. § 542.17(c).

12. Finally, response times for Requests or Appeals are defined in 28 C.F.R. § 542.18, with the filing date considered the date it is logged into the Administrative Remedy Index as received. Responses are to be provided by the Warden or Residential Rentry Manager within 20 calendar days, by the Regional Director within 30 calendar days, and by the General Counsel within 40

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 - 3

calendar days. Extensions to response times may be granted, with notice to the inmate, if the allocated time is insufficient for a proper decision. Failure to receive a response within the designated timeframe, including any extensions, may be construed as a denial at that level, permitting the inmate to proceed further in the appeal process. 28 C.F.R. § 542.18.

13. Wilford has exhausted his administrative remedies. Wilford filed a BP-9 with the Warden which was denied. Wilford appealed the Warden's denial via BP-10 to the Regional Director. Wilford never received a response to his BP-10 and treated the lack of a response as a denial, 28 C.F.R. § 542.18, and filed a final BP-11 appeal with the Central Office. On January 31, 2024, Wilford was provided a "Rejection Notice" by FCI Terminal staff which states the Regional Director responded to the BP-10 on October 29, 2023, and that he needed to resubmit his BP-11 with that response within 15 days. However, the BOP, despite several attempts, has never provided Wilford with a receipt for the BP-10 nor a copy of the response to the BP-10. As such, Wilford has exhausted his available administrative remedies.

## V.     STATEMENT OF FACTS

14. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281, was enacted.

15. The CARES Act authorized the Director of the BOP to approve and place inmates on home confinement during the covered emergency period.

16. The essence of home confinement is release from prison, before the completion of a sentence, on the condition that the individual abide by certain rules during the balance of the sentence. The BOP's home confinement authority under 18 USC 3624(c) is expressly intended to "afford th[e] prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community."

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 - 4

17. In 2020, then BOP Director Michael Carvajal testified before Congress about the BOP's response to COVID-19 pandemic and indicated that BOP had begun aggressively screening individuals to be placed on home confinement "for service of the remainder of their sentence."

18. In April 2023, the Director of the BOP, Colette Peters, provided a memorandum to all Residential Reentry Managers instructing "that any individual placed on home confinement under the CARES Act will remain on home confinement under the CARES Act for the remainder of their sentence, provided that they are compliant with the rules and regulations of community placement."

19. On May 9, 2023, Wilford was approved for home confinement under the CARES Act by the Warden at FCI Terminal Island. After being approved for home confinement, BOP staff informed Mr. Wilford that he would remain at home for the balance of his sentence. Staff never informed Mr. Wilford that he could be re-imprisoned without a violation of his confinement conditions. On June 15, 2023, Wilford begin his period of home confinement.

20. On August 2, 2023, Wilford's home confinement was terminated without notice or a hearing. No allegation that Wilford committed any disciplinary infraction or otherwise violated the rules of home confinement was ever made. U.S. Marshals assumed custody of Wilford and he was returned to FCI Terminal Island to serve out the remainder of his sentence.

21. Wilford, during his period of home confinement, did not commit any disciplinary infractions or violations of the home confinement conditions, and remained compliant with the rules and regulations of community placement.

22. To date, Wilford has not been provided a hearing or any process whatsoever concerning his removal from home confinement and return to FCI Terminal Island.

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 - 5

23. In a November 7, 2023, Statement by BOP Director Peters to The Subcommittee On Crime And Federal Government Surveillance Committee On The Judiciary United States House Of Representatives, she said:

> During the COVID-19 pandemic, the Coronavirus Aid, Relief, and Economic Security (CARES) Act enabled many individuals in Bureau facilities to be placed in home confinement for their health and safety. We tracked the individuals under our care whom we moved into home confinement. From March 2020 **through June 24, 2023**, we transferred approximately 13,666 individuals into home confinement under our CARES Act authority, with the vast majority of those individuals completing their sentence in home confinement without returning to an institution. Although the specific authority for new CARES Act home confinement placements has ended, those already in home confinement remain there.

## VI. ARGUMENT

### I. THE BUREAU OF PRISONS' ACTIONS VIOLATED THE DUE PROCESS RIGHTS OF RICHARD WILFORD

#### A. <u>Wilford's Liberty Interest in Home Confinement is Protected by the Due Process Clause</u>

24. The due process clause of the Fifth Amendment safeguards individuals from being deprived of life, liberty, or property without due process of law. In the context of home confinement, liberty interests arise not only from the Constitution but also from the statutory framework established by Congress and the BOP's own regulations. Procedural protections are due to individuals on home confinement, such as Wilford, before home confinement can be revoked because: (1) the nature of their interest in continued liberty on home confinement is within the "liberty or property" language of the Fifth Amendment; and (2) revocation of home confinement constitutes a grievous loss.

25. Wilford, while on home confinement, was able to do a wide range of activities open to people who have never been convicted of crimes, including living at home with family, seeking gainful employment, attending community church services, caring for his loved ones, connecting

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 - 6

with members in the community, and forming other enduring attachments of normal life. Wilford was subject to restrictions while on home confinement, but his living situation was vastly different from that of incarcerated individuals.

26. Additionally, the CARES Act and the BOP Director's memorandum clearly indicated that inmates like Wilford, who comply with the conditions of their home confinement, are entitled to serve their sentences in the community. This, along with the conditions of home confinement, established a liberty interest, as recognized *Freeman v. Pullen*, 658 F. Supp. 3d 53 (D. Conn. 2023). The *Freeman* court granted a writ of habeas corpus because the petitioner's due process rights were violated when Freeman was reincarcerated without procedural protections after having been placed on home confinement. The court determined that the petitioner had a protected liberty interest in her home confinement status. According to *Freeman*, the BOP's reincarceration of Freeman without a hearing or written statement detailing the reasons for this action was a violation of due process. To remedy the situation, the Court required the BOP to return Freeman to home confinement. Further, the court ordered the BOP to give Freeman due process before any future attempt to revoke her home confinement.

27. Here, Wilford relied on communications from BOP staff that he would not be brought back to serve the remainder of his prison sentence absent misconduct or a violation of the home confinement rules. Staff at FCI Terminal Island explicitly communicated that he would be returned to prison only for misconduct. Wilford was never informed that he could be brought back to FCI Terminal Island without a violation of the home confinement agreement.

28. Consistent with *Freeman*, the Court should find that the BOP violated Wilford's Due Process rights by removing him from home confinement without any process whatsoever.

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 - 7

B. <u>The BOP's Revocation of Home Confinement Without a Hearing Constitutes a Violation of Due Process</u>

29. The abrupt revocation of Wilford's home confinement without any form of hearing or notice runs afoul of the procedural protections guaranteed by the Fifth Amendment. In the seminal case of *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court held that even parolees are entitled to a two-part inquiry before parole revocation. By analogy, the failure to provide any such process to Wilford, whose status as a person on home confinement is akin to that of a parolee, is a clear violation of his due process rights.

## VII. RELIEF REQUESTED.

30. The Court should grant this Petition for Writ of Habeas Corpus, and order that Wilford be returned to home confinement. Additionally, the Court should require the BOP to provide Wilford with procedural due process before any future attempt to remove him from home confinement.

/s/ Shaun Khojayan

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 - 8