E. MARTIN ESTRADA
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
MATTHEW TANG (Cal. Bar No. 341020)
Assistant United States Attorney
General Crimes Section
      1200 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-0470
      Facsimile: (213) 894-6269
      E-mail:   Matthew.Tang@usdoj.gov

Attorneys for Plaintiff
JAMES ENGLEMAN, Warden

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

RICHARD ANTHONY WILFORD,

     Petitioner,

     v.

JAMES ENGLEMAN, Warden,

     Respondent.

No. 2:24-cv-01470-DDP-GJS

RESPONDENT'S RESPONSE TO BRIEF OF AMICI CURIAE AMERICAN CIVIL LIBERTIES UNION FOUNDATION AND ACLU FOUNDATION OF SOUTHERN CALIFORNIA

     Respondent James Engleman, Warden of the Federal Correctional Institution at Terminal Island, by and through his counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Matthew Tang, hereby files this Response to the American Civil Liberties Union Foundation and the American Civil Liberties Union Foundation of Southern California's amici curiae brief.

//

//

//

1    This Response is based on the attached memorandum of points and

2  authorities, the files and records in this case, and such other

3  evidence or argument as may be requested by the Court.

4   Dated: December 16, 2024          Respectfully submitted,

5                                     E. MARTIN ESTRADA
                                       United States Attorney
6
                                       LINDSEY GREER DOTSON
7                                     Assistant United States Attorney
                                       Chief, Criminal Division
8

9                                            /s/
                                       _____
10                                     MATTHEW TANG
                                       Assistant United States Attorney
11
                                       Attorneys for Respondent
12                                     JAMES ENGLEMAN, Warden

# **TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION.................................................1

II.   BACKGROUND..................................................2

      A.    Petitioner's Projected Release Date is August 4, 2030.....2

      B.    The BOP's Authority to Place Inmates in Home
            Confinement Pursuant to the CARES Act Expired on May
            10, 2023..............................................2

      C.    The BOP Placed Petitioner in Home Confinement on June
            15, 2023, After Its Authority to Do So Under the CARES
            Act Had Expired, and Revoked Petitioner's Home
            Confinement Soon Afterward............................4

III.  ARGUMENT....................................................5

      A.    The BOP Could Take Petitioner Out of Home Confinement
            Because It Never Had Authority to Place Petitioner in
            Home Confinement in the First Place...................5

            1.    The BOP Had the Power to Correct the Mistake It
                  Made When It Placed Petitioner in Home
                  Confinement....................................5

            2.    The BOP's Mistake Did Not Violate Petitioner's
                  Due Process Rights.............................6

      B.    Alternatively, The BOP Could Take Petitioner Out of
            Home Confinement Because Its Decision to Do So is
            Purely Discretionary.................................9

            1.    The CARES Act Permitted Placement and Removal
                  from Home Confinement on a Purely Discretionary
                  Basis..........................................9

            2.    Department of Justice Regulations Permit Removal
                  from Home Confinement on a Purely Discretionary
                  Basis.........................................12

            3.    Discretionary Acts Do Not Require Process..........13

            4.    Courts Have Held That the BOP Has Discretion to
                  Return Prisoners on CARES Act Home-Confinement to
                  Secured Facilities............................17

IV.   CONCLUSION.................................................19

**TABLE OF AUTHORITIES**

CASES                                                                  PAGE

Albrecht v. Birkholz,
  No. CV 23-1587-GW(E), 2023 WL 5417099 (C.D. Cal. June 23, 2023) .. 18

Cardoza v. Pullen,
  No. 3:22-CV-00591 (SVN), 2022 WL 3212408 (D. Conn. Aug. 9, 2022) . 16

Codd v. Velger,
  429 U.S. 624 (1977) ............................................... 14

Gonzalez-Fuentes v. Molina,
  607 F.3d 864 (1st Cir. 2010) ..................................... 14

Green v. Christiansen,
  732 F.2d 1397 (9th Cir. 1984) ..................................... 6

Johnson v. Williford,
  682 F.2d 868 (9th Cir. 1982) .................................. 6, 7

Moody v. Daggett,
  429 U.S. 78 (1976) ............................................... 14

Morrissey v. Brewer,
  408 U.S. 471 (1972) .......................................... 15, 16

Olim v. Wakinekona,
  461 U.S. 238 (1983) .............................................. 14

Reeb v. Thomas,
  636 F.3d 1224 (9th Cir. 2011) .................................... 14

Romano v. Warden, FCI Fairton,
  No. CV 23-1052 (CPO), 2023 WL 3303450 (D.N.J. May 8, 2023) ....... 18

Sandin v. Conner,
  515 U.S. 472 (1995) .............................................. 14

Tetterton v. Warden, FCI Fort Dix,
  No. CV 23-1394 (CPO), 2023 WL 4045086 (D.N.J. June 16, 2023) ..... 18

ii

**TABLE OF AUTHORITIES (CONTINUED)**

STATUTES                                                                    PAGE

Touizer v. Att'y Gen. of United States,
  No. 20-CV-25169, 2021 WL 371593 (S.D. Fla. Feb. 3, 2021) .........17

Touizer v. U.S. Att'y Gen.,
  No. 21-10761, 2021 WL 3829618 (11th Cir. Aug. 27, 2021) ..........17

Triplett v. FCI Herlong, Warden,
  No. 2:22-CV-0083 AC P, 2023 WL 2760829 (E.D. Cal. Apr. 3, 2023) .14,
  17

United States v. Ceballos,
  671 F.3d 852 (9th Cir. 2011) .....................................9

United States v. Gutierrez,
  No. 1:11-CR-30009-AA-3, 2020 WL 6743000 (D. Or. Nov. 17, 2020) 3, 10

United States v. Martinez,
  837 F.2d 861 (9th Cir. 1988) .............................. 6, 7, 9

United States v. Ricks,
  No. CR 15-00132 SOM, 2023 WL 6216910 (D. Haw. Sept. 25, 2023) .....5

United States v. Robles,
  No. CR-15-08033-PCT-DGC, 2021 WL 5299682 (D. Ariz. Nov. 15, 2021) .2

United States v. Wilford,
  No. CR ELH-11-258, 2022 WL 2392237 (D. Md. July 1, 2022) ..........2

Young v. Harper,
  520 U.S. 143 (1997) ..........................................15, 16


STATUTES

18 U.S.C. § 3621(b) ............................................. 8, 9

18 U.S.C. § 3624(c) ............................................10, 11

18 U.S.C. § 3624(c)(1) ...................................... 2, 4, 11

**TABLE OF AUTHORITIES (CONTINUED)**

STATUTES                                                                    PAGE

18 U.S.C § 3624(c)(2).........................................3, 4, 8, 9

21 U.S.C. § 846...................................................2

Pub. L. No. 101-647...............................................8

Pub. L. No. 116-136...............................................1


REGULATIONS

28 C.F.R. § 0.96.............................................12, 13

28 C.F.R. § 0.96(u)(2)...........................................12


OTHER AUTHORITIES

Discretion to Continue the Home-Confinement Placements of Fed.

  Prisoners After the Covid-19 Emergency,

  2021 WL 6145876 (O.L.C. Dec. 21, 2021).....................10, 13

Views Regarding OLC Opinion, "Home Confinement of Federal Prisoners

  After the COVID-19 Emergency" dated January 15, 2021 (Dec. 10,

  2021).........................................................13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The American Civil Liberties Union Foundation and the American Civil Liberties Union Foundation of Southern California (collectively, "amici") claim that the Bureau of Prisons ("BOP") removed petitioner from his "home, jobs, and loved ones" with "no process whatsoever."  Doc. No. 21-3 ("Amici Br.") at 3.  That is not true.  Petitioner received the full panoply of due process protections when he was convicted, and then sentenced, in 2014 to a term of 340 months' imprisonment.[1]  Accordingly, it is not fundamentally unfair for petitioner to serve the remainder of his sentence, which is set to end on August 4, 2030[2], in a secured BOP facility.

The question before the Court is not whether the BOP may deprive petitioner of liberty without due process -- petitioner was already provided due process.  Rather, the question is whether the BOP, having placed petitioner in home confinement on June 15, 2023, pursuant to the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 ("CARES Act"), properly removed petitioner from home confinement after the coronavirus pandemic had ended.  The answer is yes.

Although the CARES Act granted the BOP authority to place inmates in extended home confinement, it did so on a temporary basis to address the impact of the COVID-19 pandemic on overcrowded

---

[1] Petitioner's sentence was later reduced to 280 months' imprisonment after the sentencing court granted in part Petitioner's motion for compassionate release.

[2] That is, assuming petitioner earns all available Good Conduct Time and Earned Time Credits under the First Step Act.

prisons.  Under the CARES Act, the BOP's extended home confinement
authority expired on May 10, 2023, when the "covered emergency
period" defined by the CARES Act ended.  The BOP could therefore
return petitioner to a secured facility because: (1) the BOP exceeded
its authority when it placed petitioner in home confinement after May
10, 2023; and (2) the BOP in any case had discretion to remove
petitioner from home confinement after the end of the "covered
emergency period."

## II.  BACKGROUND

### A.    Petitioner's Projected Release Date is August 4, 2030

On August 7, 2014, petitioner was sentenced in the District of
Maryland to 340 months' imprisonment following his conviction for
conspiracy to distribute and possess with intent to distribute
cocaine in violation of 21 U.S.C. § 846.  Doc. No. 8-1 ("Sanchez
Decl.") ¶ 4(a).  On July 1, 2022, the Maryland district court granted
in part petitioner's Motion for Compassionate Release, reducing his
sentence from 340 months' to 280 months' imprisonment.  See United
States v. Wilford, No. CR ELH-11-258, 2022 WL 2392237, at *50 (D. Md.
July 1, 2022).  Based on this reduced sentence, petitioner's
projected release date is August 4, 2030, assuming he earns all
available Good Conduct Time and Earned Time Credits under the First
Step Act.  Sanchez Decl. ¶¶ 4(c), (d).

### B.    The BOP's Authority to Place Inmates in Home Confinement
### Pursuant to the CARES Act Expired on May 10, 2023

Under 18 U.S.C. § 3624(c)(1), a prisoner is only eligible for
prerelease custody, including home confinement, in the final twelve
months of his or her sentence.  See 18 U.S.C. § 3624(c)(1); United
States v. Robles, No. CR-15-08033-PCT-DGC, 2021 WL 5299682, at *2 (D.

Ariz. Nov. 15, 2021) ("Because Defendant is not presently serving the final year of his term of imprisonment, he is not eligible for early release to home confinement or a residential reentry center under the SCA."). Moreover, under 18 U.S.C § 3624(c)(2), the BOP is only permitted to place prisoners in home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2).

In response to the coronavirus pandemic, however, Congress passed the CARES Act, which the President signed on March 27, 2020. Under the CARES Act, the Director of the BOP could "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" under 18 U.S.C. 3624(c)(2) "as the Director determines appropriate." CARES Act, § 12003(b)(2). The CARES Act thus permitted the BOP to place a prisoner in home confinement for more than six months, and before the final twelve months of his or her sentence.

Importantly, section 12003 of the CARES Act was a temporary measure meant to address the impact of the coronavirus pandemic on overcrowded prisons. See United States v. Gutierrez, No. 1:11-CR-30009-AA-3, 2020 WL 6743000, at *1 (D. Or. Nov. 17, 2020). The Director of the BOP only had authority to lengthen the maximum home confinement time "[d]uring the covered emergency period." Id. The "covered emergency period," in turn, "means the period beginning on the date on which the President declared a national emergency . . . with respect to the Coronavirus Disease 2019 (COVID-19) and ending on the date that is 30 days after the date on which the national emergency declaration terminates." Id. § 12003(a)(2).

3

On April 10, 2023, the President signed a joint resolution of Congress terminating the COVID-19 national emergency.  H.J.R. Res. 7, 118th Cong. (2023) (enacted).  The "covered emergency period" thus ended on May 10, 2023, 30 days after the termination of the COVID-19 national emergency.  Accordingly, after that date, the BOP no longer had authority under the CARES Act to lengthen the maximum amount of time for which a prisoner may be placed on home confinement. Instead, under 18 U.S.C. § 3624(c)(2), the BOP could only place petitioner in home confinement for a maximum of six months.  And under 18 U.S.C. § 3624(c)(1), the BOP could only place petitioner in home confinement during the final twelve months of his sentence.

**C.    The BOP Placed Petitioner in Home Confinement on June 15, 2023, After Its Authority to Do So Under the CARES Act Had Expired, and Revoked Petitioner's Home Confinement Soon Afterward**

On May 9, 2023, one day before the end of the covered emergency period, the Warden of the Federal Correctional Institution at Terminal Island in San Pedro, California ("FCI Terminal Island") referred petitioner to placement in a Residential Reentry Center ("RRC") and stated that petitioner was "being reviewed for immediate Home Confinement (HC) based on guidelines due to the COVID-19 pandemic."  Sanchez Decl. ¶ 5, Ex. B at 2.  The BOP, however, did not place petitioner in home confinement until June 15, 2023, over one month after its authority to do so under the CARES Act had expired. Sanchez Decl. ¶ 6(b).  The BOP subsequently revoked petitioner's home confinement, and on August 2, 2023, the United States Marshal Service removed petitioner from home confinement.  Sanchez Decl. ¶ 6(c).

III. **ARGUMENT**

   A.   **The BOP Could Take Petitioner Out of Home Confinement Because It Never Had Authority to Place Petitioner in Home Confinement in the First Place**

   1.   <u>The BOP Had the Power to Correct the Mistake It Made When It Placed Petitioner in Home Confinement</u>

The BOP's authority to place petitioner in home confinement for more than six months expired on May 10, 2023, when the "covered emergency period" under the CARES Act ended.  Although the warden of the facility where petitioner was incarcerated indicated that petitioner was being reviewed for placement in home confinement on May 9, 2023 -- one day before the end of the "covered emergency period" -- the BOP did not actually place petitioner in home confinement until June 15, 2023.  As the CARES Act only authorized the Director of the BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" during the "covered emergency period," the BOP exceeded its authority when it transferred petitioner to home confinement well before the final twelve months of his sentence and purported to lengthen the amount of time it could place petitioner in home confinement from six months to over seven years[3] after the "covered emergency period" had already ended.  <u>See</u> CARES Act, § 12003(b)(2).

The BOP erroneously placed petitioner in home confinement before he was eligible for home confinement.  <u>See</u> <u>United States v. Ricks</u>, No. CR 15-00132 SOM, 2023 WL 6216910, at *2 (D. Haw. Sept. 25, 2023) ("The BOP Director's emergency authorization to transfer incarcerated

---

[3] Petitioner was placed in home confinement on June 15, 2023, over seven years before his projected release date of August 4, 2030.

1   people to home confinement more than six months before their

2   anticipated release date expired earlier this year.").  The BOP could

3   therefore take petitioner out of home confinement to rectify that

4   mistake.  In Green v. Christiansen, 732 F.2d 1397 (9th Cir. 1984),

5   for example, the Ninth Circuit held that "prison authorities had the

6   power to recommit [petitioner] after he was released by mistake so

7   long as his sentence would not have expired had he remained in

8   confinement."  Id. at 1399.  If prison authorities can recommit an

9   inmate after a mistaken release from prison, it follows a fortiori

10  that they can return an inmate from one custodial arrangement to

11  another after a mistaken placement.  See id. ("A ministerial mistake

12  does not necessarily excuse [petitioner] from serving the rest of his

13  sentence.").

14          2.    The BOP's Mistake Did Not Violate Petitioner's Due

15                Process Rights

16      The Ninth Circuit has found that in a narrow set of

17  circumstances, the government may violate due process by

18  reincarcerating an erroneously released prisoner.  See Johnson v.

19  Williford, 682 F.2d 868 (9th Cir. 1982).  Such a violation, however,

20  requires government misconduct that amounts to "more than

21  negligence."  Id. at 873.  Indeed, the government's actions must be

22  "so affirmatively improper or grossly negligent that it would be

23  unequivocally inconsistent with 'fundamental principles of liberty

24  and justice' to require a legal sentence to be served in its

25  aftermath."  United States v. Martinez, 837 F.2d 861, 864 (9th Cir.

26  1988) (quoting Green, 732 F.2d at 1399).

27      In Johnson, for example, the petitioner was ineligible for

28  parole, but the government nevertheless "encouraged and heightened"

6

the petitioner's expectation of release on parole through "at least eight separate administrative reviews" spanning two years.  Johnson, 682 F.2d at 870, 872.  This "culminat[ed] in 15 months of parole release" before the government realized its error and returned petitioner to custody.  Id.  The court held that the government's actions justified the petitioner's expectation that his parole would continue such that the government could be estopped from returning the petitioner to custody.  Id.

The BOP did not foster a similar expectation here, nor were its actions "so affirmatively improper or grossly negligent" as to require petitioner's placement in home confinement for the remaining seven years of his sentence.  The record indicates that the BOP conducted a single administrative review in May 2023 before placing petitioner in home confinement in June 2023, and that the BOP quickly rectified its error in August 2023.  Sanchez Decl. ¶¶ 5, 6, Exs. B, C.  The BOP did not "encourage and heighten" petitioner's expectation of a particular custodial placement through multiple rounds of interviews, nor were petitioner's expectations cemented by having remained in home confinement for an extended period of time.  Petitioner could not have spent much longer than a month waiting to be placed in home confinement; and he was only in home confinement for fewer than seven weeks.  These timescales pale in comparison to the two years of anticipation and fifteen months of parole described in Johnson.  See also Martinez, 837 F.2d at 864 (government's seven and one-half year delay in incarcerating petitioner "[did] not constitute action so affirmatively wrong or inaction so grossly negligent that fundamental fairness [was] violated").

1    Importantly, unlike the petitioner in <u>Johnson</u>, petitioner here

2    was never released from custody.  A release from prison carries with

3    it an expectation of finality that a custodial transfer does not.

4    Whereas the BOP generally does not have unfettered discretion to

5    return an inmate to prison, it has sole authority to "designate the

6    place of [a] prisoner's imprisonment."  18 U.S.C. § 3621(b).

7    Petitioner therefore could not have had the same expectation of

8    remaining in home confinement as he would have had remaining released

9    on parole.

10    Moreover, parole is a longstanding part of our criminal justice

11   system.  Home confinement as a form of pre-release custody, on the

12   other hand, is a much more recent addition.  <u>See</u> Crime Control Act of

13   1990, Pub. L. No. 101-647, 104 Stat. 4789 (enacted November 29,

14   1990).  And since its introduction, the use of home confinement has

15   generally been limited to the final six months of an inmate's

16   sentence.  18 U.S.C. § 3624(c)(2).  Although the CARES Act eventually

17   permitted periods of home confinement exceeding six months, it did so

18   in response to a unique emergency and on a temporary basis.  Given

19   that the coronavirus pandemic had ended by the time petitioner was

20   placed in home confinement, and that the remaining seven years of

21   petitioner's sentence far exceeded the typical six months of home

22   confinement allowable under 18 U.S.C. § 3624(c)(2), petitioner's

23   mistaken placement in home confinement for only one and a half months

24   before his return to BOP facilities is not "unequivocally

25   inconsistent with 'fundamental principles of liberty and justice.'"

26    The BOP's mistake in placing petitioner in home confinement for

27   one and a half months may have constituted negligence, but it "did

28   not rise to the level of gross negligence, thereby violating due

8

process." Martinez, 837 F.2d at 865. Because Petitioner's short time in home confinement does not entitle him to seven additional years of pre-release custody, the Court should reject amici's arguments to the contrary.

**B.    Alternatively, The BOP Could Take Petitioner Out of Home Confinement Because Its Decision to Do So is Purely Discretionary**

      1.    The CARES Act Permitted Placement and Removal from Home Confinement on a Purely Discretionary Basis

The BOP has sole authority to "designate the place of [a] prisoner's imprisonment." 18 U.S.C. § 3621(b). Such "a designation of a place of imprisonment . . . is not reviewable by any court." Id.; see also United States v. Ceballos, 671 F.3d 852, 855 (9th Cir. 2011) ("The [BOP] has the statutory authority to choose the locations where prisoners serve their sentence.").

The BOP's authority to designate the place of imprisonment extends to home confinement, subject to the limitation that the BOP can only "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). In the wake of the Coronavirus pandemic, however, Congress drafted the CARES Act to temporarily lift that limitation. CARES Act, § 12003(b)(2). But in doing so, Congress was careful to state that "the Director of the [BOP] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement . . . as the Director determines appropriate." Id. (emphasis added). The Director's authority to lengthen petitioner's home confinement placement under the CARES Act

is therefore discretionary.  See Doc. No. 13 ("Report and Recommendation") at 5-6 (citing cases).

Amici acknowledge that the BOP's initial placement of an inmate in home confinement under the CARES Act is discretionary.  Amici Br. at 14.  Amici, however, attempt to distinguish the BOP's initial decision to place an inmate in home confinement and the BOP's subsequent decision to remove an inmate from home confinement.  Id.  This distinction has no basis in the law.  The CARES Act temporarily permitted the BOP to place a petitioner in home confinement for longer than six months.  Nowhere does the CARES Act require such a placement to be for the remainder of an inmate's sentence.

"In passing the CARES Act, Congress expanded the authority of the [BOP] to utilize the home confinement authorized by 18 U.S.C. § 3624(c) to address the exigencies and dangers of crowded prisons during a pandemic."  Gutierrez, 2020 WL 6743000, at *1.  It stands to reason that after such exigencies and dangers have passed, the BOP can return the inmates it had transferred to home confinement pursuant to the CARES Act back to prison.  Notably, the Department of Justice's ("DOJ") Office of Legal Counsel ("OLC") previously concluded that "all home-confinement prisoners who did not fall within section 3624(c)(2)'s time limits must be returned to a correctional facility" after the expiration of the "covered emergency period."  See Discretion to Continue the Home-Confinement Placements of Fed. Prisoners After the Covid-19 Emergency, 2021 WL 6145876, at *3 (O.L.C. Dec. 21, 2021) (emphasis added).  The OLC has now softened its position, opining that the CARES Act "give[s] the [BOP] discretion over which inmates to return to facilities and which to leave in home confinement at the end of the emergency period."  Id.

at *4.  But given the temporary nature of the CARES Act, the question has always been whether the CARES Act mandated the return of home-confinement prisoners to secured facilities at the end of the emergency period, or whether the CARES Act gave the BOP discretion to permit some prisoners to remain in home confinement after the emergency period had ended.  Under either interpretation, the BOP could lawfully remove petitioner from home confinement after the end of the emergency period.

Amici nevertheless take the extreme position that the CARES Act, a temporary measure, mandates a permanent solution, i.e., the placement of prisoners in home confinement beyond the "covered emergency period."  Amici argue that Congress intended home confinement to be served during "the final months" of an inmate's sentence.  Amici Br. at 9-10 (quoting 18 U.S.C. § 3624(c)(1)).  This is not accurate.  18 U.S.C. § 3624(c)(1) expresses an intention that "a portion of the final months" be spent in pre-release custody, which can include RRC placement, not just home confinement, and only "to the extent practicable."  Id. (emphasis added).  Nor is it relevant.  Amici rely on Congressional intent as it relates to a statute enacted several decades before the CARES Act, and not the CARES Act itself.  Even accepting amici's assertion, however, the BOP may still allow petitioner to spend the final months of his sentence in home confinement without allowing petitioner to spend the final seven years of his sentence in home confinement.  The BOP's removal of petitioner from home confinement several years before the end of his sentence is therefore consistent with both the CARES Act and 18 U.S.C. § 3624(c).

2.   <u>Department of Justice Regulations Permit Removal from Home Confinement on a Purely Discretionary Basis</u>

Under 28 C.F.R. § 0.96, the BOP may "permit[]" a prisoner who had been placed in home confinement prior to the expiration of the "covered emergency period" to remain on home confinement after the expiration of the "covered emergency period," but only "as the Director determines appropriate," and "provided the prisoner is compliant with all conditions of supervision."  28 C.F.R. § 0.96(u)(2).  Consistent with the OLC's position described above, the rule does not <u>require</u> the BOP to permit a prisoner to remain in home confinement beyond the "covered emergency period," it <u>allows</u> the BOP to do so.  Moreover, the requirement that a prisoner comply with the terms of home confinement is a necessary, but not a sufficient, condition of remaining in home confinement past the "covered emergency period."

Amici cite to 28 C.F.R. § 0.96, but misread it.  They assert that the rule "authorizes remand to prison only '[i]n the event that a prisoner violates conditions of supervision[.]"  Amici Br. at 10 (alterations in original).  To be clear, the rule states: "In the event a prisoner violates the conditions of supervision, Bureau staff may return the prisoner to secure custody . . . ."  28 C.F.R. § 0.96(u)(2).  Intentional or not, amici's addition of the word "only" completely changes the rule's meaning.  Just because the BOP may return a prisoner to secure custody in the event of a violation, does not mean that the BOP may return a prisoner to secure custody <u>only</u> in the event of a violation.

Amici next cite a BOP memorandum opinion, claiming that it supports their position that prisoners can only be transferred back

12

to secure correctional facilities if they violate the conditions of
home confinement.  Amici Br. at 10-11.  The opinion does not lend
amici the support they think it does.  It states that "[u]nder
regular circumstances, inmates who have made [the] transition to home
confinement would not be returned to a secured facility, unless there
was a disciplinary reason for doing so."  Views Regarding OLC
Opinion, "Home Confinement of Federal Prisoners After the COVID-19
Emergency" dated January 15, 2021, at 5 (Dec. 10, 2021) ("BOP
Memorandum") (emphasis added).  The negative implication is that
there are circumstances where home-confinement inmates would be
returned to a secured facility without a disciplinary reason for
doing so.  Indeed, a later-published OLC memorandum opinion, citing
the BOP Memorandum, has taken the position that the CARES Act "is
'most reasonably interpreted' to give the [BOP] discretion over which
inmates to return to facilities and which to leave in home
confinement at the end of the emergency period."  Discretion to
Continue the Home-Confinement Placements of Fed. Prisoners After the
Covid-19 Emergency, 2021 WL 6145876, at *4 (O.L.C. Dec. 21, 2021)
(quoting BOP Memorandum).

Taken together, 28 C.F.R. § 0.96 and the two memorandum opinions
make clear that the BOP has discretion to decide whether prisoners
placed in home confinement pursuant to the CARES Act should remain in
home confinement.  As such, the BOP's exercise of discretion to
remove petitioner from home confinement remained well within the
ambit of its authority.

### 3.   Discretionary Acts Do Not Require Process

"[T]he Due Process Clause does not require process unless, in
the individual case, there is a relevant factual dispute between the

parties." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 894 (1st Cir. 2010) (quoting Sandin v. Conner, 515 U.S. 472, 503 (1995) (Breyer, J., dissenting)). Absent a factual dispute, a hearing would serve no purpose. Codd v. Velger, 429 U.S. 624, 627 (1977) ("[I]f the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute . . . which has some significant bearing on [the underlying deprivation].").

Amici contend that a hearing is needed to determine whether petitioner violated the conditions of home confinement. Amici Br. at 21-22. But such a hearing would serve no purpose -- the BOP does not claim that petitioner violated any conditions of home confinement. Instead, as discussed above, the BOP could, and did, exercise its discretion to remove petitioner from home confinement for the sole reason that the "covered emergency period" under the CARES Act has ended. Because the "exigencies and dangers of crowded prisons during a pandemic" no longer exist, the BOP has discretion to return prisoners placed in home confinement pursuant to the CARES Act back to a secured facility. The exercise of such discretion does not implicate a prisoner's due process rights. See Olim v. Wakinekona, 461 U.S. 238, 249 (1983) ("If the decisionmaker is not required to base its decisions on objective and defined criteria, but instead can deny the requested relief for any constitutionally permissible reason or for no reason at all, the State has not created a constitutionally protected liberty interest." (citation and internal quotation marks omitted)); Reeb v. Thomas, 636 F.3d 1224, 1229 n.4 (9th Cir. 2011) ("discretionary determinations regarding conditions of confinement do not create due process rights" (citing Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976))); Triplett v. FCI Herlong, Warden, No. 2:22-CV-0083 AC

14

P, 2023 WL 2760829, at *3 (E.D. Cal. Apr. 3, 2023) ("Because the BOP
has the discretion to return petitioner to home confinement, to keep
him in prison, or to place him in a residential reentry program,
petitioner was not deprived of any constitutionally protected liberty
interest when the BOP opted to have him returned to prison").

Amici attempt to analogize CARES Act home confinement to parole
as described in Morrissey v. Brewer, 408 U.S. 471 (1972), by
asserting that the prisoners placed in home confinement enjoy almost
as much liberty as those released on parole. Amici Br. at 8-9.
Amici miss the point. Home confinement under the CARES Act differs
from parole primarily because home confinement under the CARES Act
was meant to be temporary, and the BOP has discretion to return CARES
Act home-confinement prisoners to secure custody after the end of the
"covered emergency period" for any reason, or for no reason at all.
This discretion does not exist in the parole context, where parole is
expected to last until the expiration of the sentence, and where a
parole-revocation decision "involves a . . . factual question:
whether the parolee has in fact acted in violation of one or more
conditions of his parole." Morrissey, 408 U.S. at 479.

Petitioner's reliance on Young v. Harper, 520 U.S. 143 (1997) is
similarly misplaced because Young, like Morrissey, did not involve a
purely discretionary decision. There, Oklahoma's parole board had
revoked an inmate's participation in a preparole conditional release
program. Id. at 145-46. The Supreme Court rejected the state
officials' assertion that the parole board "had authority to
reimprison a preparolee for any reason or for no reason" because they
brought up the argument "for the first time in this Court" and
"point[ed] to nothing to support their contention." Id. at 151 n.3.

15

Instead, it held that the inmate had a protected liberty interest in the program, basing its decision in large part on its finding that "preparole as it existed at the time of respondent's release was equivalent to parole as understood in Morrissey." Id. at 147. Parole as understood in Morrissey, in turn, could not be revoked for any reason or no reason at all -- it required "an appropriate determination that the individual has in fact breached the conditions of parole." Morrissey, 408 U.S. at 483-84.

Here, the BOP did not need to make a factual determination that petitioner violated the conditions of home confinement in order to return him to a secured facility. The legal basis for placing petitioner in home confinement in the first place ended with the conclusion of the CARES Act's "covered emergency period." The BOP could therefore remove petitioner from home confinement for the simple reason that it could safely return petitioner to a prison that was not overcrowded or affected by the pandemic.

Amici nevertheless argue that those on CARES Act home confinement "rely on an 'implicit promise' that they will remain on home confinement as long as they comply with conditions of release." Amici Br. at 9. Amici, however, provide no legal authority for this assertion. As discussed above, the DOJ rule and memorandum amici cite demonstrate the opposite. Petitioner therefore has no due process right in his temporary placement in home confinement. See Cardoza v. Pullen, No. 3:22-CV-00591 (SVN), 2022 WL 3212408, at *6 (D. Conn. Aug. 9, 2022) ("Petitioner has not plausibly alleged that she had a liberty interest in remaining in home confinement because she has not set forth allegations forming the basis of an implicit

1  promise that she would remain on home confinement status if she

2  behaved properly.").

3        4.    Courts Have Held That the BOP Has Discretion to Return

4              Prisoners on CARES Act Home-Confinement to Secured

5              Facilities

6        Contrary to amici's suggestion, courts have held that prisoners

7  in home confinement pursuant to the CARES Act have no

8  constitutionally protected interest in remaining in home confinement.

9  In Triplett, for example, the court stated that "petitioner was not

10  deprived of any constitutionally protected liberty interest when the

11  BOP opted to have him returned to prison" without process.  Triplett,

12  2023 WL 2760829, at *3.  Although amici are correct that Triplett

13  ultimately dismissed the petition for lack of standing, it did so

14  based on its conclusion that the BOP's revocation of home confinement

15  did not violate due process.  See id. ("Without a violation of a

16  constitutional right, petitioner has no standing to file a petition

17  under Section 2241 . . . .").  Additionally, Touzier directly held

18  that the BOP's removal of a prisoner from home confinement did not

19  violate the prisoner's due process rights because "a duly convicted

20  prisoner does not have a liberty interest in his place of

21  confinement."  Touzier v. Att'y Gen. of United States, No. 20-CV-

22  25169, 2021 WL 371593, at *4 (S.D. Fla. Feb. 3, 2021).  The Eleventh

23  Circuit affirmed, nothing that "[j]ust as the BOP has the authority

24  to release prisoners to home confinement, so too does it have the

25  power to revoke that release."  Touzier v. U.S. Att'y Gen., No. 21-

26  10761, 2021 WL 3829618, at *2 (11th Cir. Aug. 27, 2021).

27        Amici note that other courts have dismissed similar due process

28  claims on jurisdictional grounds.  Amici Br. at 15-17.  These courts,

however, held that they lack jurisdiction because the BOP's decision to revoke home confinement is discretionary.  See, e.g., Albrecht v. Birkholz, No. CV 23-1587-GW(E), 2023 WL 5417099, at *2 (C.D. Cal. June 23, 2023) ("Petitioner's claim that the BOP violated due process by revoking his home confinement placement alleges only a challenge to the BOP's individualized placement decision.  The Ninth Circuit squarely has held that a federal court lacks jurisdiction under Section 2241 to review the BOP's individualized placement decision."); Tetterton v. Warden, FCI Fort Dix, No. CV 23-1394 (CPO), 2023 WL 4045086, at *3 (D.N.J. June 16, 2023) (dismissing petition challenging revocation of home confinement for lack of jurisdiction because "the federal CARES Act . . . vests in the Director of the Bureau of Prisons discretion to transfer an inmate to home confinement"); Romano v. Warden, FCI Fairton, No. CV 23-1052 (CPO), 2023 WL 3303450, at *2 (D.N.J. May 8, 2023) (same).

The weight of authority thus favors an interpretation of the CARES Act that allows the BOP to exercise its authority to return prisoners from home confinement to secure custody now that the "covered emergency period has ended."

//

//

//

//

//

//

//

//

## IV.  CONCLUSION

For the foregoing reasons, Respondent respectfully requests that this Court adopt the Report and Recommendation and dismiss the Petition.

Dated: December 16, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division


          /s/
_____
MATTHEW TANG
Assistant United States Attorney

Attorneys for Respondent
JAMES ENGLEMAN, Warden

19

The undersigned, counsel of record for Respondent James Engleman, certifies that this brief contains 4,947 words, which complies with the word limit of L.R. 11-6.1.


Dated: December 16, 2024          Respectfully submitted,

                                  E. MARTIN ESTRADA
                                  United States Attorney

                                  LINDSEY GREER DOTSON
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  _____/s/_____
                                  MATTHEW TANG
                                  Assistant United States Attorney

                                  Attorneys for Respondent
                                  JAMES ENGLEMAN, Warden